ELIZABETH CITY COTTON MILLS v. W. E. DUNSTAN.

*Corporation—Subscription to Stock—Liability of Delinquent Subscriber—"By", Meaning of as a Designation of Time.*

1. When used to designate a terminal point of time the word "by" means "not later than"; hence, a condition affixed to a subscription to the capital stock of a corporation that a certain amount should be subscribed for "by July 1st" was fulfilled by the total subscriptions reaching such amount on the night of July 1st.

2. Under Section 664 of *The Code*, a corporation is empowered to provide by its by-laws for the sale of shares of a subscriber who makes default in paying the assessments.

3. Where the by-laws of a corporation provided that. if any stock holder should fail to pay his installments when called by the directors for two months, the stock should be declared forfeited and sold for account of the delinquent, publicly after thirty days notice, and that the proceeds of such sale should be applied to the payment of the amount due on the subscription and the balance, if any, should be paid to the delinquent but that such forfeiture and sale should not relieve the delinquent from his original subscription; *Held*, that such by-law was a reasonable one and the subscriber whose stock was duly declared forfeited and sold for less than its face value can be required to pay the difference between his subscription and the amount for whcih it was sold.

CIVIL ACTION tried, on appeal from the judgment of a Justice of the Peace, before *Greene, J.*, and a Jury at July, 1897, Special Term of PASQUOTANK Superior Court. The

COTTON MILLS v. DUNSTAN.

action was for $200.00, the difference between the amount of defendant's subscription to the stock of plaintiff corporation and the amount for which the stock sold after having been declared forfeited according to the by-laws of the Company.

The only issue submitted on the trial was,

"Is the defendant indebted to the plaintiff, and if so in what sum?"

It was admitted that the plaintiff was duly incorporated and organized, and had a regularly elected, qualified and acting Board of Directors. Dr. O. McMullan, witness for plaintiff, testified: "I am president of E. City Cotton Mills. $80,000,00 were subscribed on July 1st, 1895. Subscription was completed on the night of July 1st, 1895. Mr. Dunstan has not paid the amount of his subscription to my knowledge. Mr. Bradford was directed to make call. The call was made to my knowledge. I saw the form of the notice. He exhibited them each time. It called for payment. We notified delinquents from month to month. We did not sell any stock until all was due. We then advertised according to by-law and sold at Court House door. We declared the stock forfeited before advertisement and sale in regular meeting of the Board of Directors according to section 25 of our by-laws. Dunstan's stock sold for $300.00. Balance due from him $200.00. Mr. Bradford made demand. Dunstan subscribed before incorporation or organization. $80,000.00 made up on night of July 1st, 1895. It was not made up on the morning of July 1st, 1895. There was no subscription in excess of $80,000.00."

The subscription agreement signed by the defendant (who agreed to take five shares of stock) was as follows:

"We, the undersigned, mutually agree with each other that we will take and pay for the number of shares opposite our names hereby subscribed as stock in a Cotton Fac-

tory to be erected in or near Elizabeth City, N. C., and to pay for each share of stock the sum of One Hundred Dollars as follows: 5 per cent. when temporary organization is made, 5 per cent. in thirty days thereafter, and balance in monthly installments of not more than 10 per cent., provided this shall not be binding unless $80,000.00 is subscribed by July 1st, 1895."

Section 25 of the by-laws of the Company was as follows:

"If any stockholder shall fail to pay his installment when called by the Board of Directors for two months, the stock of such delinquent may be declared forfeited by the Board of Directors and sold for account of such delinquent, publicly, after thirty day's notice, and the net proceeds of such sale be applied first to the payment of all amounts due upon such stock and the balance, if any, paid to delinquent; Provided, however, that the forfeiture and sale of the stock of any delinquent shall not release him from his original subscription; and such delinquent shall forfeit his right to vote at all meetings of stockholders. And no subscriber shall be entitled to vote at any meeting of the stockholders until he shall pay at least one assessment."

D. B. Bradford, for plaintiff, testified: "I was Secretary and Treasurer of the Elizabeth City Cotton Mills from July 1, 1895, to December, 1896. Then I gave up Treasurer's place. Dunston's subscription was handed me. I sent him notices just as I did the others each month. The notices were mailed. The sale of this stock at the courthouse door was advertised and sold according to By-Laws. Mr. Dunstan's stock was bought by Mr. T. G. Skinner. He paid the money and I issued the stock. Skinner did not buy for company. Sale was bona fide."

Defendant, for himself, testified as follows: "I do not know that J. A. Temple was solvent at the time of his subscription. I am defendant. I was present in courthouse on

night of July 1st, 1895, only as a citizen. The house was one-third or one-half full of people. Plenty who did not subscribe. I do not think I voted on any question that night. I left before the organization. I usually retire early. Have paid nothing on stock. Have never attended any meeting. Received By-Laws eleven days after sale of my stock. I never saw my stock advertised. I examined the bulletin board when it was organized and never saw my name. I was here. I don't think I was present when it was announced that $80,000.00 had been subscribed.

D. B. Bradford recalled by defendant, testified: "I do not know as to the solvency of all the subscribers to the $80,-000.00 capital stock of plaintiff company. Some have paid and some have not paid. Some who subscribed and have paid are insolvent and some who subscribed and have not paid are insolvent."

Defendant requested the court to charge the jury as follows:

1. If you find from the evidence that plaintiff forfeited and sold the stock of defendant in accordance with Section 25 of its By-Laws, then you will answer the issue, NO.

2. Upon all the evidence the court instructs you to answer the issue, NO.

3. If you find from the evidence that the full amount of $80,000.00 stock was not subscribed until the night of July 1st, 1895, then $80,000.00 was not subscribed by July 1st, 1895, and you will answer the issue, NO.

His Honor declined to so instruct the jury and charged that if they believed all the evidence they would answer the issue $200.00. The jury returned a verdict for $200.00 and costs of action and from the judgment thereon defendant appealed.

*Mr. G. W. Ward*, for plaintiff.
No counsel for appellant.

CLARK, J.: The agreement was that the subscription was not to be binding unless the sum of $80,000 was subscribed "by July 1." The full amount named was subscribed at the meeting held on the night of July 1. This was a performance of the condition. "By" has many significations, but when used to designate a terminal point of time it is defined by the Century Dictionary to mean "not later than," "as early as." The Standard defines it "not later than," and Webster "not later than," "as soon as." The condition therefore, "by July 1" meant that the whole amount should be subscribed "not later than" July 1. It has been held that a bill or note for the payment of money "by November 1" is due on that day, *Preston* v. *Dunham*, 52 Ala. 217; *Randolph on Com. Paper*, Section 110. A note payable "by 20th of May" is due on that day, *Stevens* v. *Blount*, 7 Mass., 240; 1 *Daniel Neg. Inst.*, Sec. 43. In like manner a promise to pay "against 25th of December" is due on that day, *Goodloe* v. *Taylor*, 10 N. C., 458. A note payable "on or by" a certain day is payable on that day, *Massie* v. *Belford*, 68 111, 298. A contract to deliver "900 bushels of barley by November 1," is performed by its delivery on or before that day. *Coonley* v. *Anderson*, 1 Hill N. Y., 519.

The evidence is uncontradicted that the stock was duly advertised and sold in accordance with the terms of the company's by-laws, notice first having been sent the defendant by mail, who admits receipt. His denial of having seen the advertisement has no bearing. It is true that, in the absence of statutory authority, the power to declare stock forfeited for non-payment of assessments is not inherent in a corporation (23 *Am. & Eng. Enc.*, 818), but *The Code,* Sec. 664, empowers corporations to provide by their by-laws, *inter alia*, "the mode of selling shares for non-payment of assessments." The by-law in this case is a reasonable one. The defendant has been unfortunate but he has

COOK *v.* GUIRKIN.

no valid ground of objection to the proceeding by which he has both lost his stock and been adjudged to pay the difference between his subscription and the price for which the stock was sold. He would have avoided all loss, if he had paid for his stock according to the terms of his subscription. The other stockholders had a right to hold him to his contract. If this were not so, all corporate enterprises would fail in the beginning.

No error.